UNITED STATES DISTRICT COURT
EASTERN DISTYRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Eastern District of Kentucky
FILED
MAR 20 2019
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

Civil Action No. 18-66-HRW

UNITED STATES OF AMERICA,                                          PLAINTIFF,

v.                    **MEMORANDUM OPINION AND ORDER**

ROSE O. URADU, M.D.
a/k/a ONYINYECHI ROSE URADU
and
ULTIMATE CARE MEDICAL SERVICES, LLC
d/b/a ULTIMATE TREATMENT CENTER,                                   DEFENDANTS.

This matter is before the Court upon Plaintiff's Motion to Strike Defendants' Affirmative Defenses [Docket No. 16]. The matter as been fully briefed by the parties. For the reasons stated herein, the Court will sustain the motion.

I.

The United States of America filed this civil action against Rose Uradu, M.D. and Ultimate Treatment Center, the substance abuse center which she owns and operates in Ashland, Kentucky. The basis for its lawsuit is set forth in the opening paragraphs of the Complaint:

> The United States seeks civil penalties under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and its implementing regulations, 21 C.F.R. § 1300 *et seq.*, on two bases: First, Dr. Uradu issued buprenorphine prescriptions to twice as many patients as is permitted by law. *See* 21 U.S.C. § 842(a)(1). Second, Ultimate Treatment Center failed to maintain complete and accurate records of the clinic's methadone and buprenorphine inventories, as reflected by shortages of both controlled substances. *See* 21 U.S.C. § 827(a)(3). This failure to

1

> comply with the Controlled Substances Act's record-keeping requirements created the potential for the unlawful diversion of these drugs.
>
> The United States also seeks to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, on two bases: First, during the period January 2013 to September 2014, Ultimate Treatment Center, at the direction of Dr. Uradu, systematically defrauded the Medicare and Kentucky Medicaid programs by submitting false claims for evaluation and management services that were not actually provided to patients. Second, during the period July 2013 to December 2014, Ultimate Treatment Center, at the direction of Dr. Uradu, defrauded the Medicare and Kentucky Medicaid programs by submitting false claims for quantitative urine drug tests that were not actually performed. The false or fraudulent claims Ultimate Treatment Center submitted, and that Dr. Uradu caused it to submit, have resulted in losses to the Medicare and Kentucky Medicaid programs in excess of $1 million.

[Docket No. 1, ¶¶ 2,3].

In their Answer, Defendants asserted the affirmative defenses of statue of limitations, equitable estoppel and corporate credit for services rendered. [Answer, Docket No. 13, ¶¶ 197-201].

Plaintiff seeks entry of an Order striking these defenses as legally insufficient.

## II.

Federal Rule of Civil Procedure 8(b)(1)(A) requires a party responding to a pleading to "state in short and plain terms its defenses to each claim asserted against it." Rule 8(c)(1) states that a defendant "must affirmatively state any avoidance or affirmative defense," and provides a list of nineteen affirmative defenses.

Affirmative defenses plead matters extraneous to the plaintiff's prima facie case, which deny plaintiffs right to recover, even if the allegations of the complaint are true. *Martin v.*

2

*Weaver*, 666 F.2d 1013, 1019 (6th Cir. 1981). The burden of proving an affirmative defense rests with the party asserting it. *Id.*

Rule 12(f) of the Federal Rules of Civil Procedure permits a party, or the court acting *sua sponte*, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Sixth Circuit has held that "the action of striking a pleading should be sparingly used by the courts" and should be "resorted to only when required for the purposes of justice" and when "the pleading to be stricken has no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir. 1953).

An affirmative defense is insufficient when, as a matter of law, the defense cannot succeed under any circumstances. *Id. See also Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997).

Although generally disfavored, the decision whether to strike an affirmative defense is wholly discretionary. *Conocophillips Co. v. Shaffer,* 2005 WL 2280393, at *2 (N.D. Ohio Sept. 19, 2005) ("Rule 12(f) permits the Court to act with discretion in that it may strike irrelevant and superfluous defenses or let them stand. There is absolutely no harm in letting them remain in the pleadings if, as the Plaintiff contends, they are inapplicable.")

Motions to strike, however, may serve important purposes in the appropriate circumstances, such as leaning up the pleadings, streamlining litigation and avoiding unnecessary forays into immaterial matters. These motions may "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Kennedy v. City of Cleveland,* 797 F.2d 297, 305 (6th Cir. 1986) (quoting *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

# III.

## A.

The United States seeks to strike Defendants' statute of limitations defense, arguing that there are no facts which would support such a defense. The Court agrees.

The statute of limitations is a possible affirmative defense for which the defendant bears the burden of proof. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). Here, both the FCA claims and the claims for unjust enrichment and payment by mistake are subject to a six-year statute of limitations. *NRHH*, 2012 WL 4598699, at *3, 8; 31 U.S.C. § 3731(b). "An FCA claim accrues each time a false claim is submitted." *Id.*, at *3, 8 (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 498 F.Supp.2d 389, 400 (D. Mass. 2007)).

In this case, the United States alleges that Defendants submitted the false claims at issue to the Medicare and Kentucky Medicaid programs during the period January 2013 to December 2014. [Docket No. 1, ¶¶ 1, 3]. The Uni9ted States filed its complaint alleging these FCA violations in June of 2018, well within the six-year statute of limitations period. As such, there is no viable statute of limitations defense.

Defendants cite several cases in support of their vague contention that there is, in fact, a statute of limitations issue. However, those cases, which deal exclusively with the tolling provision contained in 31 U.S.C. § 3731(b) serves to extend—not shorten—the limitations period. *See United States ex rel. Griffith v. Conn*, 117 F. Supp. 3d 961, 984–87 (E.D. Ky. 2015) (noting the six-year statute of limitations set forth in § 3731(b)(1) and considering whether § 3731(b)(2) extends the statute of limitations period beyond six years for relators in *qui tam* actions); *United States ex rel. Miller v. Bill Harbert Int'l Const.*, 505 F. Supp. 2d 1, 18 (D.D.C. 2007) ("As § 3731(b) clearly states, plaintiffs receive the benefit of a

4

statute of limitations beginning either: (1) six years from the date of the False Claims Act violation; or (2) three-years from the date the government knew or should have known of the False Claims Act violation, whichever period is longer.") The cases to which Defendants rely upon do not cast any doubt on the six-year limitations set forty in the statute; indeed, these cases seem to suggest the period may be **longer** in certain circumstances.

Moreover, discovery in this regard would serve no purpose given that the Government indisputably filed this action within six years of Defendants' alleged FCA violations.

Should the United States later seek to incorporate claims that fall outside of that time period, Defendants may seek leave to amend their answer, or file motions for summary judgment.

Accordingly, the defense of statute of limitations will be stricken.

**B.**

The United States contends that the affirmative defense of equitable estoppel should be stricken as neither Defendant has pled any facts which would purport to set forth the elements of equitable estoppel.

To assert that the United States is estopped from bringing an FCA claim, Defendants must show 1) affirmative misconduct on the part of the government through a misrepresentation, 2) "reasonable reliance on the misrepresentation" on the part of AEC, and 3) that such reliance caused detriment to AEC. *Michigan Exp., Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004) In the Sixth Circuit, the requisite affirmative misconduct "is more than mere negligence. It is an act by the government that either intentionally or recklessly misleads the claimant," and the party asserting such misconduct bears the burden of proving that intentional act. *Id.*

5

While it is true that a defendant's answer need not contain a detailed factual record in order to provide plaintiffs with the requisite "fair notice," *see Paducah River Painting*, 2011 WL 5525938, at *4, the standard for asserting estoppel as a defense is a more exacting one when used against the government where the government is attempting to recover federal funds. *United States v. Honeywell Intern., Inc.*, 841 F.Supp.2d 112, 114-16 (D.D.C. 2012) (noting that there is a presumption against invoking estoppel against government actors "in any but the most extreme circumstances" because the government "may not be estopped on the same terms as any other litigant") (quoting other sources); *see also Michigan Exp.* 374 F.3d at 427 (explaining the "very heavy burden" borne by a party attempting to estop the government).

In their Answer, Defendants assert that the United States is estopped from " ' revisiting' circumstances previously acknowledged, penalized and/or corrected by its own agents." [Docket No. 13, ¶ 199]. This assertion, in and of itself, does not address the essential elements of estoppel. In their Amended Response to the United States' motion, Defendants maintain that someone involved in the CMS administrative action "encouraged" them to repay overpaid claims and represented that payment "would simply end the matter." [Docket No. 30, p. 15]. Defendants do not allege that a government employee with authority to settle FCA claims made representations about the alleged waiver, and do not allege any facts in support of why the representations were not made in good faith. Defendants only suggest, without factual allegations in support, that the representations may have been intentionally misleading. Yet, courts have consistently rejected use of the defense where an unauthorized government employee negligently or inadvertently misled a defendant. As held by the Sixth Circuit in *Michigan Express, Inc. v. United States*, negligent misrepresentations about waiver of claims that were not made in an effort to trick the defendants do "not rise to the requisite level of malfeasance"

6

and thus, cannot support estoppel. 374 F.3d at 427–28; *cf. Estate of James*, 404 F.3d at 995 ("The Farmers in this case . . . have shown only that the local Department officials' misrepresentations to them were either inadvertent or, at worst, negligent.").

Absent from Defendants' account of their repayment to CMS describes any affirmative misconduct by the United States and, as such, any claim of estoppel is legally insufficient.

**C.**

In their Answer, Defendants seek receipt or retention of funds for rendered services that were paid at the incorrect rate. [Docket No. 13, ¶ 201]. In their Amended Response, Defendants argue that they are waiting for "proof to be subsequently obtained" in support of this defense, hypothesize that a billing rate may have been entered in error or was inapplicable, and propose that the correct billing rate would support a lower level of compensation. [Docket No. 30, pp. 18–19].

Although the Defendants' parlance suggests a set-off defense, their Answer and responsive pleading are devoid of any information relevant to the setoff. Defendants have not adequately pled the basis for a reduction in damages or crediting of service. This is contra the "fair notice" factor in affirmative defenses, to-wit, "affirmative defenses must be pleaded so as to give plaintiffs fair notice of the nature of the defense." *See United States v. Associates In Eye Care*, 2014 WL 12606508 at *5 (E.D.Ky. November 14, 2014). Accordingly, this defense will be stricken.

**IV.**

Accordingly, and the Court being sufficiently advised, for the reasons explained above, it is hereby ORDERED as follows:

1. The United States' Motion to Strike Defendants' Affirmative Defenses [Docket No. 16] be **SUSTAINED**; and

2. Defendants' Affirmative Defenses set forth in Paragraphs 196-201 of the Answer are **STRICKEN**.

This 20th day of March, 2019.



Signed By:
**Henry R. Wilhoit, Jr.**
United States District Judge